UNITED STATES DISTRICT COURT

DISTRICT OF NEW MEXICO

ALVIN DEAN BRUTON, SR.,

    Plaintiff,

v.                                                                  CIV 11-0330 WJ/KBM

UNITED STATES OF AMERICA,

    Defendant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION ON DEFENDANT'S MOTION TO DISMISS

    THIS MATTER is before the Court on Defendant's Motion to Dismiss this pro se action *(Doc. 46)*. Having reviewed the motion and response, all documents filed in this case and the relevant authorities, I recommend that the motion be denied.

    Plaintiff Alvin Bruton filed an administrative federal tort claim alleging injury "as a result of treatment between October 28, 2008, and January 12, 2009, at the Albuquerque, New Mexico, VA Medical Center." *Doc. 1* at 7. The Department of Veteran's Affairs rejected the claim saying "[o]ur review revealed no evidence of a negligent or wrongful act or omission on the part of any employee of the VA acting within the scope of his or her employment that caused harm to you." *Id.* Bruton then filed this pro se action in federal court. *Doc. 1*.

    Throughout this litigation, the Court has been cognizant of its obligation to construe the pro se complaint and all other pleadings liberally. Admittedly, this has not been an easy task given Bruton's frequent, often rambling filings. But the Court has done its best to ascertain what

claims are being raised and the alleged facts supporting those claims. In its motion, Defendant maintains that Bruton's allegations are so vague and confusing that they fail to "articulate a set of cogent or plausible facts upon which he can recover damages." *Doc. 46* at 5. The Government argues that

> [t]here is nothing in the compliant (sic), as it was originally filed or as it has been recently amended, that alerts the Defendant exactly what the Plaintiff's claims of wrong-doing by the United States are. Nothing in his complaint or amendment provide sufficient factual matters, accepted as true, that would to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Hence, it will be difficult, if not impossible to defend this scatter-shot attempt to state negligence claims against the United States. "Dismissal of a *pro se* complaint for failure to state a claim is proper only where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him a opportunity to amend." *Gee v. Pacheco,* 627 F.3d 1178, 1186 (10th Cir. 2010). Therefore, since Plaintiff has not "nudged [his] claims across the line from conceivable to plausible," his complaint must be dismissed. *Twombly*, 550 U.S. at 570.

*Doc. 46* at 6. I agree with the Government that the Complaint and other documents filed by Bruton are rambling and often incoherent and that at first glance, its proposition appears supportable. With the effort that is required to be given for liberal interpretation to a pro se pleading, however, Bruton's essential allegations and claims may be gleaned.

## I. Alleged Liability of the United States for Causing Bruton's Seizures

Presiding Judge Johnson previously stated that Plaintiff's claim against the United States is based on Plaintiff's allegation in his original complaint "that the Albuquerque Veterans Administration Hospital admitted Plaintiff and administered medical treatment that caused him to have seizures." *Doc. 22* at 2. In response to Judge Johnson's ruling, however, Mr. Bruton clarified that "Plaintiff did not state that medication caused him to have seizures (at Doc. 17) but that of financial stress - involving courts assumptions by deception caused seizures." *Doc. 25* at

2. Indeed, Plaintiff had earlier stated, "I never did assert that medication I received from the VA facility caused seizures see App. C page 1 Oct. 20th, 2008." *Doc. 17* at 1.

It is now clear that Bruton believes the 2008 seizures were precipitated by stress from his 1988 "involuntary" honorable discharge from the Army. As Bruton has stated in many prior actions, he agreed to an honorable discharge only because his company commander informed him that Bruton was barred from reenlistment because he "had received two counseling statements for failure to pay just debts." *Alvin Dean Bruton v. The United States*, 34 Fed. Cl. 347 (1995), *Doc. 18* at 9. He is correct that the bar to reenlistment was reversed years later due to tampering (a forgery) in the paperwork. *Id.* at 10. Nevertheless, the court in that case concluded that the forgery "did not vitiate SSG Bruton's consent to the subsequent discharge." *Id.* at 12. Bruton therefore received no relief on that claim.

Bruton sought to relitigate the lawfulness of his discharge issue here, *see Doc. 21* ("Motion to Declare Plaintiff's 1988 Military Discharge Unlawful") *& Doc. 23* ("discharge was not voluntary").[1] Judge Johnson dismissed that claim as barred by the doctrine of res judicata. *Doc. 22* at 3.

Seeking reconsideration of that ruling, Bruton argued that he "believes this to be a new

---

[1] Bruton argues in his response to the motion to dismiss:

> Therefore, the $243,000 dollar tort claim filled (sic) against the VA Hospital would also go to the 12 million dollars against the Sec. of Army and/or ABCMR, or in-re to Plaintiff's motion to declare Plaintiff's 1988 military discharge unlawful that would support a lawful discharge by Plaintiff's Commander and Chie as to Plaintiff's military career at this time, as to the support of evidence of malice, malicious intent and reprisal, and/or to go forth with discovery.

*Doc. 47* at 3-4, as amended by *Doc. 48*.

cause of action in-re to Plaintiff's financial stress related seizures" that he suffered in 2008. *Doc. 26* at 3. He details that financial distress when in May 1988, he and his family

> were put on a C-130 cargo plain (sic) from Germany to the United States without any money. When Plaintiff arrived in the states he had to inform taxicab, motel and pizza managers of not being able to pay until Plaintiff went to finance. This was due to Cpt. Kau not signing off on a request for travel pay, that again put Plaintiff at a financial hardship.

*Doc. 26* at 4. He contends that this, along with the failure of Congressional Offices to provide him with financial assistance "support a new cause of action, as to the deception of a lawful military discharge in-re to Plaintiff's seizures." *Id.* at 5. Once again, Judge Johnson rejected any claims for damages for the seizures that occurred two decades after Bruton's 1988 discharge from the military. *See Doc. 30.* As Plaintiff stated in his notice of appeal in the present action, "Plaintiff believes the financial stress and unlawful military discharge is (sic) the reasons that caused Plaintiff's [2008] seizures that would give rise to a new cause of action." *Doc. 33* at 3-4; *see also Doc. 34*("Motion for Jury Trial"). The Tenth Circuit dismissed the appeal because it was based on a non-final order. *Doc. 37.* Judge Johnson's ruling therefore stands as to ***any*** claims based on the 1988 discharge from the Army.

## II.  Claims Based on Medical Treatment Received at the VA Hospital in 2008

The only surviving claim following the Court's frivolousness review is that for alleged malpractice associated with medications Plaintiff received at the Veteran's Hospital in October-November 2008. *See Doc. 22*. Liberally reading the allegations of the Complaint, Bruton alleges that in late October 2008, he suffered seizures for which he was seen on October 20, 2008 at the VA Hospital. There he received 1000 mg of some unidentified medication and was released four days later. *Doc. 1* at 8. According to his time line attached to the Complaint, on November 1,

2008, he was again seen at the VA Hospital emergency room and eventually transferred to the 7th Ward. *Id.* at 9-12.

> In Nov. 2008 VA Hospital 7th Ward was informed by Plaintiff that the drug Kappra by UNM Doctors had controlled Plaintiff's seizures and Plaintiff had closing on a house, so as to also be able to secure personal property, but Defendants still locked up Plaintiff, changed and increased his medication to Depakote.  Prior to Dec. 18, 2008 VA Hospital was informed and notified by Plaintiff's local doctor, Catron County Sheriff's Department and Attorney Ron Shortes of the problems of the drug Depakote.  Dec. 18, 2008 when locked up by VA Hospital 7th Ward for the 2nd time, they staerted Plaintiff up again with the drug Depakote and back to 2500 mg. (NOTE: Plaintiff's Local Doctor found bipolar to be negative).  This would give rise to Defendants other uses and means of the drug Depakote that caused Plaintiff more problems.

*Doc.47* at 1-2.  Thus, Plaintiff asserts that it was the treatment he received on the 7th Ward that led to his competency being questioned in the ongoing state criminal proceedings with adverse effects.

I find that these allegations are sufficient to preclude dismissal of the tort claim for medical malpractice.  Under *Twombley*, the Complaint states a viable cause of action for injuries caused by the alleged negligent administration of the drug Depakote by the VA Hospital staff.

## Conclusion

I recommend that the motion to dismiss be denied as to Plaintiff's claim of medical malpractice associated with the administration of the medicines while at the VA Hospital in October - November 2008.

Plaintiff is reminded that any claims associated with his discharge from the Army over two decades ago have been dismissed from this lawsuit and will not be revived.  Thus, I further recommend that the Court caution Plaintiff to refrain from further diatribes against the military officials in association with his discharge from the Army.  *See Doc. 47* at 2-3.  Such causes of

action have been dismissed and are irrelevant to a surviving claim for medical malpractice under the Federal Tort Claims Act.

Finally, I recommended that the Court consider raising the issue of summary judgment sua sponte and directing the parties to show cause why a Rule 706 expert should not be appointed to review the medical records of Plaintiff's treatment at the VA Hospital for a determination of whether the medical care provided deviated from the standard of care.  See FED. R. EVID. 706 ("on its own, the court may order the parties to show cause why expert witnesses should not be appointed and may ask the parties to submit nominations.)"

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

*[signature: Karen B Molzen]*
UNITED STATES CHIEF MAGISTRATE JUDGE